IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 20-cv-03819-WJM

ROCKY MOUNTAIN ASSOCIATION
OF RECRUITERS,

        Plaintiff,

v.

SCOTT MOSS, in his official capacity
as Director of the Division of Labor Standards
and Statistics of the Colorado Department of
Labor and Employment;

        Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF AT DKT. 34**

---

Plaintiff Rocky Mountain Association of Recruiters ("Plaintiff" or "RMAR") respectfully submits the following in response to the supplemental briefing offered by Defendant at Dkt. 34.[1]

**I.    THE BURDENS PLAINTIFF IDENTIFIES WEIGH HEAVILY ON INTERSTATE COMMERCE.**

Defendant's first argument is that the EPEWA[2] and its implementing regulations do not burden interstate commerce, and instead only cause hardship for particular economic interests or companies ("firms")—thereby (as Defendant would have it) dooming any chance for a finding of

---

[1] The Court's two requests for supplemental briefing from Defendant at Dkt. 33 were: Expansion on Defendant's arguments about why (1) "the operational compliance costs incurred by Plaintiff's member companies . . . do not matter under the Dormant Commerce Clause analysis and *Pike*;" and (2) "why they are not representative of the types of burdens the Law places on interstate commerce."

[2] Unless otherwise indicated, capitalized terms have the meaning set forth in Plaintiff's moving papers. *See* Dkt. 7.

unconstitutional interference with the Commerce Clause under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). Defendant is incorrect. As Plaintiff has always argued, the Law burdens the processes of the interstate labor market, not merely particular participants in that marketplace.[3] *See* Dkt. 7, pp. 7-12, 18.

The leading case in this category is *Exxon Corp. v. Gov of Md.*, 437 U.S. 117 (1978). In that case, Maryland passed a law forbidding producers or refiners of gasoline, such as Exxon, from operating retail gas stations within the state. *Id.* at 119-120. The Maryland statute did not explicitly discriminate against out-of-state interests, but, in practical effect, placed all the adverse effects of the regulation on out-of-state companies, thus burdening "interstate commerce," as Exxon argued. *Id.* at 126-127. However, the Supreme Court disagreed, and held that the mere fact that the law solely affected some interstate firms, such as Exxon, when otherwise regulating evenhandedly, did not transmute the dispute into one affecting "interstate commerce." *Id.* at 127. The interstate market for gasoline remained unaffected by Maryland's statute except for a change in the identity of some retail operators of gas stations. *Id.* Thus, the Court held the Dormant Commerce Clause "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations." *Id.* at 127-28.

Subsequent cases have relied on *Exxon Corp.*'s reasoning to deny Dormant Commerce Clause challenges where the alleged burden to "interstate commerce" under a suspect law was just some variation of hardship to those *engaging in interstate commerce*, rather than interference with

---

[3] These burdens include the forced disclosure of confidential, trade secret, and proprietary information about salaries, which were discussed in Plaintiff's Motion for Preliminary Injunction at Dkt. 7 in its section describing the EPEWA's burdens on Plaintiff's members—which Plaintiff did not limit only to its claims under the First Amendment. *See* Dkt. 7 at pp. 7-8.

the process or flow of interstate commerce itself. *E.g.*, *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1151 (9th Cir. 2012) (finding California's statute forbidding opticians from selling of prescription eyeglasses in the same location where eye exams were provided did not relate to the actual interstate flow of goods but merely affected the identities of participants in the market, and thus did not substantially burden interstate commerce under the Dormant Commerce Clause); *Johnson & Johnson Vision Care, Inc. v. Reyes*, 665 Fed. App'x. 736, 745 (10th Cir. 2016) (unpublished) (finding Utah's statute forbidding contact lens manufacturers' uniform pricing policies only affected those manufacturers, and not the overall interstate contact lens market).

Other Dormant Commerce Clause cases, including those in the Tenth Circuit, also follow this functional definition of "interstate commerce" for purposes of *Pike* balancing. In *V-1 Oil Co. v. Utah State Dep't of Public Safety*, 131 F.3d 1415, 1426 (10th Cir. 1997), the plaintiff owned and operated liquid petroleum gas ("LPG") facilities both inside and outside of Utah. Utah enacted a statute creating a licensing scheme for facilities that handled LPG destined for customers within Utah. The plaintiff alleged that the application of these Utah licensing fees to its facilities in Wyoming and Idaho discriminated against interstate commerce because it was only interstate firms that had to pay "double" fees for LPG facilities (*i.e.*, fees to both Utah and to the state where the facilities were actually located), thereby decreasing the out-of-state facilities' ability to remain competitive as compared to instate facilities, and thereby altering the LPG market. *Id.* at 1424-1425. The Tenth Circuit found the burdens articulated by the plaintiff were only "incidental" to interstate commerce, at best, precisely because the regulations at issue did not in any way implicate the actual process of moving LPG between states. *Id.* at 1425-1426. And this "incidental" burden, ultimately, could not compare to the health and safety benefits of the licensing scheme asserted by

3

Utah, defeating the plaintiff's challenge to the law under *Pike*.[4]

Along with *Exxon Corp.*, cases such as *V-1 Oil Co.* establish that to burden "interstate commerce" for purposes of the Dormant Commerce Clause inquiry—rather than to burden just "interstate firms"—regulations must bear on the channels or processes by which markets function between states, *i.e.*, the methods by which goods, or funds, or labor, make their way from one state to another for commercial purposes. Otherwise, where such methods are not implicated, the typical argument by plaintiffs has been that some alteration or shift in the relevant market should be considered a burden to "interstate commerce" because of the presence of interstate players, or because some aspect of the market (not being regulated) has an interstate component. These attempts are usually rejected, and the alleged burdens found to be merely "incidental" to interstate commerce—thereby failing the *Pike* test. It is this context of "market shift" arguments in which the courts emphasize that "incidental burdens of the *Pike* inquiry are the burdens on interstate commerce that exceed the burdens on intrastate commerce." *See V-1 Oil Co.*, 131 F.3d at 1425; *see also, e.g., Energy & Env't Legal Inst. v. Epel*, 43 F. Supp. 3d 1171, 1182 (D. Colo. 2014), *affirmed on other grounds*, 793 F.3d 1169 (10th Cir. 2015) (finding that a shift in the energy market away from coal, and toward renewable sources, did not burden interstate commerce because there

---

[4] While Plaintiff has not contested that "equal pay" is an important government interest, many cases finding no *Pike* violation dealt with health and safety regulations, which are recognized to be not only legitimate but even "presumptively valid"—which certainly affects the weighting of the "putative local interest" on the *Pike* balancing scale. *E.g., V-1 Oil Co.*, 131 F.3d at 1426 (citing *Interstate Towering Assoc., Inc. v. City of Cincinnati*, 6 F.3d 1154, 1162-63 (6th Cir. 1993)); *see also Pike*, 397 U.S. at 144 (noting the Court has been "most reluctant to invalidate under the Commerce Clause state legislation in the field of safety where the propriety of local regulation has long been recognized"—and that Arizona's cantaloupe processing regulation did not fall within that category) (internal quotation marks and citations omitted). The government's interest in "equal pay" does not relate to a health or safety regulation.

4

was no evidence of a greater burden on interstate commerce than was placed on intrastate commerce) (citing *V–1 Oil Co.*, 131 F.3d at 1425)). Defendant also grossly overstates this principle with its blanket statement that the *only* burdens that matter are those Plaintiff can show are greater for "interstate" than "intrastate" commerce. That misstates *Pike* and its progeny, and is in fact directly foreclosed by *Dorrance v. McCarthy*, 957 F.2d 761, 764 (1992):

> In so ruling, the court focused on the amount of interstate commerce with Wyoming that could or did occur despite the private ownership ban, rather than considering evidence of the extensive interstate market in big game animals that was shut out of Wyoming because of the ban. **In their brief on appeal, Defendants contend that when a statute regulates evenhandedly, the extent of the burden the statute imposes on interstate commerce is irrelevant; the only inquiry is whether the statute imposes a different burden on interstate commerce than it does on intrastate commerce. Defendants' argument is not only circular, but it completely misstates the *Pike* analysis. By definition, a statute that regulates evenhandedly does not impose a different burden on interstate commerce than it does on intrastate commerce**. Furthermore, the Supreme Court has made clear that the extent of the burden on interstate commerce is a key inquiry under the *Pike* analysis.

*Id.* (emphasis added).[5]

!

Here, Plaintiff's challenge to the EPEWA does not remotely resemble Exxon's challenge to the Maryland statute in *Exxon Corp.*, or the plaintiff's challenge to Utah's licensing scheme in *V-1 Oil Co*. Plaintiff does not allege that the EPEWA burdens interstate commerce because of some particular effect on its "out-of-state" members greater than that to "in-state" interests, or because it harms any of Plaintiff's members specifically. Plaintiff's arguments have always been

---

[5] *National Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001), is cited by Defendant for the opposite point. But the Tenth Circuit case, *Dorrance*, 957 F.2d at 764, must control.

5

about the effect of the EPEWA on the talent marketplace, writ large—of which Plaintiff's members are representative, as well as the corporations they serve—and not because of some devastating effect on a particular member of Plaintiff's organization. Likewise, Plaintiff does not complain that it is shut out of or losing business in an interstate market that will continue to exist without it, which was Exxon's fundamental complaint.

Rather, Plaintiff's argument is that the EPEWA burdens interstate commerce—and not just Plaintiff's members, or even employers—because the law interferes with a fundamental part of the process of talent acquisition and mobility nationwide (and worldwide), *i.e.*, **the way employers conduct the interstate hiring of labor and promotions: job postings**.[6] Just as regulations about processing Arizona-grown cantaloupes for sale are a step along an interstate route of cantaloupe sales from Arizona to California (as was the case in *Pike*), job postings are a step along the route businesses use to hire interstate labor.[7] By regulating job postings, the EPEWA regulates the primary mechanism by which all employers with even a single Colorado employee interact with the interstate labor market. The Promotion Posting Requirement explicitly reaches all jobs an employer has available (as well as in-seat promotions for jobs that are not available, except to a given employee on a specific career path), including all jobs and promotions it has available

---

[6] A "job posting" under EPEWA is "any written or printed communication (whether electronic or hard copy) that the employer has a job available or is accepting job applications." "INFO" #9 at 1 [Dkt. 7-2].

[7] That some hiring occurs solely within Colorado by means of job postings is not relevant to the fact that the subject of EPEWA's mandate, job postings, are the primary mechanism by which the interstate labor market operates. In other words, the law regulating the processing of Arizona-grown cantaloupes in *Pike* may very well have also controlled the processing of Arizona-grown cantaloupes destined for Arizona markets, but the law still burdened interstate commerce, nonetheless. The same applies to Wisconsin's attempted regulation on the size of trailers in *Raymond Motor Transp.*, etc.

outside of Colorado. The Compensation Posting Requirement also clearly reaches the "interstate" labor market by its inclusion of remote jobs within its ambit: employers must disclose compensation ranges for jobs that statistically will 98% of the time be performed outside of Colorado, by non-Coloradoans. The burdens of undertaking the compliance obligations from the Promotion and Compensation Posting Requirements thus are upon "interstate commerce"—upon the process by which labor makes its way from one state to another for commercial purposes. The EPEWA's requirements add excessive hurdles to hiring and promotions for all participants in the interstate labor market who happen to have even a single employee in Colorado, and these burdens regularly extend outside of Colorado in the manner described above, making it more difficult nationwide for employers to engage with the interstate labor pool.

Defendant is also incorrect that Plaintiff must somehow show the EPEWA "will harm the national market" by reducing the total number of jobs available to workers nationwide. *See* Dkt. 34 at 10. *Johnson & Johnson Vision Care*, 665 F. App'x at 745, the case cited by Defendant for this proposition, asserts no such requirement for all Dormant Commerce Clause challenges. In that case, contact lens manufacturers sued to stop Utah from enforcing a law prohibiting them from requiring retailers to sell contact lenses at uniform minimum prices. In the course of arguing that Utah's law impermissibly burdened interstate commerce even if it otherwise regulated evenhandedly, the contact lens manufacturers argued the law would affect the interstate market by interfering with their interstate pricing policies. Because the subject statute clearly did not implicate any channel of interstate commerce, the manufacturers necessarily needed to show some effect on the interstate market over and above an effect on their particular businesses to survive a challenge under *Exxon Corp*. In comparing the contact lens manufacturers' claims to those of

7

Exxon in *Exxon Corp.*, the Tenth Circuit suggested that like Exxon, the contact lens manufacturers had merely shown that other businesses would step in to take advantage of the market as a result of the challenged law, which is explicitly permissible under *Exxon Corp.*—rather than showing some kind of reduction in the overall national contact lens market, which might have distinguished the case.

Here, as explained above, Plaintiff is alleging a regulation on the channels of the interstate labor market, and so the burdens it has identified are ones directly placed on interstate commerce even absent any evidence about the overall national market effects of the law. Additionally, Plaintiff also does argue that the Promotion Posting Requirement will necessarily eliminate the confidential search industry—not just shift the industry away from Colorado recruiters. Bayne Decl. ¶ 16. [Dkt. 7-11].

## II.     THE BURDENS ON PLAINTIFF'S MEMBERS ARE REPRESENTATIVE OF THE BURDENS PLACED ON INTERSTATE COMMERCE.

Defendant also asserts that the "operational compliance costs" identified by Plaintiff's members are not significant for purposes of *Pike*, even if such costs could be considered a burden on interstate commerce. But such costs are exactly the type of burdens the Court weighed in *Pike* itself and other cases: costs to a plaintiff for having to comply with a state regulation affecting interstate commerce.[8] Those same burdens have repeatedly been found to be illustrative of burdens

---

[8] *See* discussion above in Section I, *supra*, for why the EPEWA burdens "interstate commerce."

on similarly-situated persons, and thus upon interstate commerce as a whole in the aggregate.[9] The relevant "burdens" considered in cases where the courts actually engaged in *Pike* balancing include the following:

- In *Pike*, 397 U.S. at 142, the Supreme Court considered whether the cantaloupe-grower's cost to comply with the statute—$200,000 to build a new processing facility in Arizona—outweighed Arizona's interest in ensuring plaintiff's superior produce could carry labeling denoting it was from Arizona;

- In *Raymond Motors Transp., Inc. v. Rice*, 434 U.S. 429 (1978), the Supreme Court considered whether the increased cost to trucking companies, of which the plaintiff was representative, from being unable to use double trailers for goods driven through Wisconsin outweighed Wisconsin's asserted interest in safety;

- In *V-1 Oil Co.*, 131 F.3d at 1424, the Tenth Circuit considered whether licensing fees paid by out-of-state LPG facilities outweighed Utah's asserted interest in such facilities' safety;

- In *Quik Payday, Inc. v. Stork*, 549 F.3d 1302, 1310 (10th Cir. 2008), the Tenth Circuit considered whether licensing fees required for lenders of supervised loans outweighed Kansas's interest in protecting Kansas consumers.

---

[9] *Johnson & Johnson Vision Care, Inc. v. Reyes*, 665 F. App'x at 745, is not to the contrary. In that case, the Court emphasized its consideration of the burden on interstate commerce "rather than the Manufacturers' specific burdens," in keeping with the analysis in Section I, *supra*, and the requirements of *Exxon Corp. E.g.*, *id.* ("we focus our analysis on the overall putative local benefits and the burdens on interstate commerce, rather than the Manufacturers' specific burdens.").

It is not at all accurate to say that "the vast majority of cases disclaim[] the import of financial costs to dormant Commerce Clause analysis," as Defendant asserts at Dkt. 34 at 9. Indeed, the Tenth Circuit took even minimal licensing fees of less than $1,000 quite seriously as a potential burden in both *V-1 Oil Co.* and *Quik Payday, Inc.*, even if it ultimately found, in both cases, that the "interstate" portion of the burden of obtaining those licenses did not outweigh the benefit of the licensing scheme. What the cases actually disclaim is the importance of financial impact **not related to interstate commerce**, as Plaintiff describes in Section I, *supra*. *Pioneer Mil. Lending, Inc. v. Manning*, 2 F.3d 280, 283 (8th Cir. 1993) is not outside the norm in this respect. As that Court noted: "*Exxon* neither overruled *Pike*, nor made irrelevant the burden that a state regulation places on an individual business." *Id*.

Defendant also attempts to specifically distinguish *Raymond Motor Transportation* as a "special" case involving interstate transportation of goods, and thereby receiving heightened solicitude from Courts in Dormant Commerce Clause cases. While that may very well be accurate in practical effect (but on which Plaintiff takes no position, as it is outside the scope of this dispute), there is no reason to believe the type of burdens on the plaintiff in *Raymond Motor Transportation* should not be illustrative of the type of costs that go on the "burden" side of the *Pike* balancing test, in a general sense. In addition to the monetary costs the Wisconsin statute imposed on the plaintiff, the *Raymond Motor Transportation* Court also noted that the regulations slowed the "flow" of interstate commerce itself, incurring delays in the physical movement of goods as trucking companies used single trailers instead of double trailers to travel through Wisconsin. *Id*. at 445. This delay in the actual shipping of goods is not at all unlike the delay that results from the Promotion Posting Requirement's mandate that employers notify Colorado employees of

worldwide "promotional opportunities," and pause the promotional process to accommodate that notice.

Finally, Defendant takes the opportunity to take a belated swipe at the evidence presented by Plaintiff in support of its Motion for Preliminary Injunction [Dkt. 7], which it declined to do in its Response brief at Dkt. 23. Plaintiff's evidence remains unrebutted. Defendant's assertion that Plaintiff must produce "a significant quantum" of evidence in support of its challenge, Dkt. 34 at 13, is not found in *Kleinsmith v. Shurtleff*, 51 F.3d 1033, 1043-44 (10th Cir. 2009), which Defendant cites. In that case, the plaintiff presented **no** evidence of the burdens of the challenged statute, nor did he present evidence challenging the statute's putative benefits as asserted by the government. *Id*. at 1043. Here, in contrast, it is Defendant who has declined to present coherent evidence of EPEWA's putative benefits, or to challenge Plaintiff's evidence of its burdens.

### III. THE COURT SHOULD REJECT DEFENDANT'S REPEATED INVITATION TO IMPOSE NEW REQUIREMENTS ON THE *PIKE* TEST IN THIS CIRCUIT.

Finally, Defendant takes numerous opportunities in its brief to suggest that this Court abandon not only this Circuit's clear application of the *Pike* test in circumstances where there is no discrimination against out-of-state interests, in favor of a reading of *Pike* "as a protectionist effect case," *see* Dkt. 34 at 9, but also **that it abandon *Pike* balancing entirely**, *see id*. at 16-17.[10]

---

[10] Plaintiff maintains that this case is not one where there is discrimination against out-of-state interests within the meaning of *Pike*. However, to the extent the Court finds it relevant, there very clearly is a "protectionist nature" to the statute, *cf.* Dkt. 34 at 8, which requires businesses to provide special solicitude to Colorado employees and not to others, by giving Colorado employees notice of all promotional opportunities available throughout the entire business.

The Tenth Circuit does not approach *Pike* in this manner.[11] In *V-1 Oil Co.*, 131 F.3d at 1415, the Tenth Circuit applied *Pike* balancing precisely because it found that Utah's LPG licensing scheme "regulate[d] evenhandedly" and did not discriminate against out-of-state interests. No "protectionist" purpose was divined in that case, and was in fact explicitly rejected over the plaintiff's assertion. *See id.*; *accord Blue Circle Cement, Inc. v. Board of County Comm'rs of County of Rogers*, 27 F.3d 1499, 1512 (10th Cir. 1994). And the Tenth Circuit's most recent case applying *Pike* balancing, from December 2016, *Johnson & Johnson Vision Care, Inc.*, 665 Fed. App'x at 744-745, takes exactly the same approach.[12]

Certainly, Defendant cites cases where courts roundly criticize *Pike*, and, in the case of the Seventh Circuit, impose an entirely different standard. The Seventh Circuit would apply only basic rational basis review to Plaintiff's challenge, and decline to engage in any *Pike* balancing whatsoever, precisely because of the lack of discrimination to out-of-state interests. *See National Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1130 (7th Cir. 1995). The Court should decline this invitation to abrogate the Tenth Circuit's clear precedent. The Tenth Circuit has not seen fit to follow these approaches of its sister Circuits—even when presented the opportunity to

---

[11] This is true notwithstanding then-Judge Gorsuch's dicta in *Energy & Env't Legal Institute v. Epel*, 793 F.3d 1169, 1171-72 (10th Cir. 2015), as the appellant in that case did not ask for review of the District Court's decision rejecting its challenge under *Pike*. *See id.* at 1172.

[12] *Johnson & Johnson Vision Care, Inc., id.*, is unpublished. The last published case in the Circuit, *Direct Marketing Ass'n v. Brohl*, 814 F.3d 1129, 1135 (10th Cir. 2016), is not to the contrary. To be sure, in its general opening remarks on the Dormant Commerce Clause, *Direct Marketing Association* states that the "primary concern" of the Dormant Commerce Clause is "economic protectionism," 814 F.3d at 1135, as that point was clearly relevant to the analysis engaged in by the Court. But *Direct Marketing Association* did not ultimately grapple with *Pike* balancing, because the *Pike* argument was not made by the parties either before the trial court or on appeal. *Id.* at 1146 n.21.

do away with *Pike*—and instead follows the well-trodden path that continues to interpret *Pike* in the manner advocated by Plaintiff here.

Finally, Defendant suggests Plaintiff should lose this case because no other Court has ever invalidated an employment law under *Pike*. That this case is of first impression with respect to employment law is not surprising, because no other state legislature has sought to regulate the content of job postings, as Plaintiff explained in its opening brief. Even California thought such demands went too far, and settled on less burdensome disclosure requirements to achieve the same result sought by the Colorado Legislature. New frontiers of regulation necessarily implicate new legal analysis. The EPEWA's burden on interstate commerce is clearly excessive in relation to its putative local benefits, and it should be enjoined.

Dated: May 17, 2021

*s/ Joshua B. Kirkpatrick*
Joshua B. Kirkpatrick
Jennifer S. Harpole
Grace L. McGuire
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Phone:  303.629.6200 | Fax:  303.629.0200
Email:  jkirkpatrick@littler.com
           jharpole@littler.com
           gmcguire@littler.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on May 17, 2021, I filed a copy of the foregoing document via the Court's CM/ECF system, which will deliver a copy upon all counsel of record.

Evan P. Brennan
John August Lizza
Krista Marie Maher
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
Phone: 720-508-6161
Fax: 720-508-6041
Email: evan.brennan@coag.gov
       john.lizza@coag.gov
       krista.maher@coag.gov

*Attorneys for Defendant*

>    */s/ Grace L. McGuire*
>    Grace L. McGuire

14