IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-3819-WJM-STV

ROCKY MOUNTAIN ASSOCIATION OF RECRUITERS,

      Plaintiff,

v.

SCOTT MOSS, in his official capacity as Director of the Division of Labor Standards
and Statistics of the Colorado Department of Labor and Employment,

      Defendant.

---

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

---

      This matter is before the Court on Plaintiff Rocky Mountain Association of
Recruiters's Motion for Preliminary Injunction ("Motion"), filed on December 31, 2020.
(ECF No. 7.)  For the reasons stated below, the Motion is denied.

## I. BACKGROUND

### A.    Factual Background[1]

      In May 2019, the Colorado General Assembly passed Senate Bill 19-85, the
Colorado Equal Pay for Equal Work Act, now codified at Colorado Revised Statute §§ 8-
5-101 through 8-5-203 (the "Law").  The implementing regulations for the Law are found
at 7 Colo. Code Reg. § 1103-13 (the "Implementing Regulations").

---

[1] The following factual summary is based on the parties' briefs on the Motion and
documents submitted in support thereof.  These facts are undisputed unless attributed to a party
or source.  All citations to docketed materials are to the page number in the CM/ECF header,
which sometimes differs from a document's internal pagination.

1.   <u>The Law & Implementing Regulations</u>

Plaintiff challenges Part 2 of the Law and the Implementing Regulations, which include two main requirements: (1) the Promotion Posting Requirement; and (2) the Compensation Posting Requirement.

a.   *The Promotion Posting Requirement*

Under Colorado Revised Statute § 8-5-201(1),

> [a]n employer shall make reasonable efforts to announce, post, or otherwise make known all opportunities for promotion to all current employees on the same calendar day and prior to making a promotion decision.

7 Colo. Code Reg. § 1103-13:4.2.1 provides that a "promotional opportunity" exists "when an employer has or anticipates a vacancy in an existing or new position that could be considered a promotion for one or more employee(s) in terms of compensation, benefits, status, duties, or access to further advancement."

The Implementing Regulations further state that a promotion opportunity announcement must be "in writing and include at least (A) job title, (B) compensation and benefits per Rule 4.1, and (C) means by which employees may apply for the position." *Id.* § 1103-13:4.2.2.  Moreover, an employer makes "reasonable efforts" with any method(s) by which all covered employees (A) can access within their regular workplace, either online or in hard copy, and (B) are told where to find required postings or announcements.  *Id.* § 1103-13:4.2.3.  An employer "may not limit notice to those employees it deems qualified for the position, but may state that applications are open to only those with certain qualifications, and may screen or reject candidates based on such qualifications."  *Id.* § 1103-13:4.2.4.

The Promotion Posting requirement contains certain exceptions.  A promotion

opportunity need not be posted to all employees:

> (1)    if the employer has a compelling need to keep a particular opening confidential because the position is still held by an incumbent employee who, for reasons other than avoiding job posting requirements, the employer has not yet made aware they will be separated;

> (2)    for a promotion within one year of an employee being hired with a written representation (whether in an offer letter; in an agreement; or in a policy the employer publishes to employees) that the employer will automatically consider the employee for promotion to a specific position within one year based solely on their own performance and/or employer needs; or

> (3)    to fill a position on a temporary basis for up to six months where the hiring is not expected to be permanent, *e.g.*, an acting or interim position.

*Id.* § 1103-13:4.2.5.

Finally, the regulations clarify that the Promotion Posting requirement does not apply to employees entirely outside Colorado.  *Id.* § 1103-13:4.3.

> b.    *The Compensation Posting Requirement*

Under Colorado Revised Statute § 8-5-201(2),

> [a]n employer shall disclose in each posting for each job opening the hourly or salary compensation, or a range of the hourly or salary compensation, and a general description of all of the benefits and other compensation to be offered to the hired applicant.

7 Colo. Code Reg. § 1103-13:4.1.1 requires employers to include the following compensation and benefits information in each posting: (1) the hourly rate or salary compensation (or a range thereof) that the employer is offering for the position;[2] (2) a

---

[2] "A posted compensation range may extend from the lowest to the highest pay the employer in good faith believes it might pay for the particular job, depending on the circumstances.  An employer may ultimately pay more or less than the posted range, if the posted range was the employer's good-faith and reasonable estimate of the range of possible

general description of any bonuses, commissions, or other forms of compensation that are being offered for the job; and (3) a general description of all employment benefits the employer is offering for the position, including health care benefits, retirement benefits, any benefits permitting paid days off (including sick leave, parental leave, and paid time off or vacation benefits), and any other benefits that must be reported for federal tax purposes, but not benefits in the form of minor perks.

Finally, the regulations clarify that the Compensation Posting Requirement does not apply to: (1) jobs to be performed entirely outside Colorado; or (2) postings entirely outside Colorado. *Id.* § 1103-13:4.3. However, "Interpretative Notice & Formal Opinion ('INFO') # 9," published by the Colorado Department of Labor and Employment's ("CDLE") Division of Labor Standards and Statistics, states that "[r]emote jobs for a covered employer (*i.e.*, an employer with any Colorado employees), as of the posting, are not out-of-state jobs, and are therefore not excluded" from the Compensation Posting Requirement. (ECF No. 7-2 at 2.)

c.   *Enforcement*

The Law grants the authority to "carry out, and enforce all of the provisions of this Part 2" to the Director of the Division of Labor Standards and Statistics of the CDLE. Colo. Rev. Stat. § 8-5-203(1). Among other things, the Director "may order the employer to pay a fine of no less than five hundred dollars and no more than ten thousand dollars per violation." *Id.* § 8-5-203(4).

2.   Legislative History

The Senate Bill for the Law states, *inter alia*, that:

---

compensation at the time of the posting." 7 Colo. Code Regs. § 1103-13:4.1.2.

- Despite policies outlawing pay discrimination and creating avenues for women to bring a civil action for lost wages, women still earn significantly less than their male counterparts for the same work;

- According to a report released in March 2018 by the Institute for Women's Policy Research and The Women's Foundation of Colorado: (I) women in this state earn just 86 cents for every dollar men earn; (II) Latinas earn 53.5 cents and black women earn 63.1 cents for every dollar earned by white men; and (III) if the wage gap were eliminated, a working woman in Colorado would earn, on average, $7,000 more per year, which would pay for 1.9 years of community college tuition or approximately 6 months of child care costs;

- The effects of pay disparity compound over a woman's lifetime, with women losing between $400,000 and $1 million over the course of a lifetime due to the wage gap;

- Equal pay would cut the poverty rate for working women in half and reduce the poverty rate for employed single mothers by more than 40 percent; and

- It is the intent of the general assembly to pass legislation that helps to close the pay gap in Colorado and ensure that employees with similar job duties are paid the same wage rate regardless of sex, or sex plus another protected status.

(ECF No. 7-1 (quoting S.B. 19-85, Colorado Equal Pay for Equal Work Act, 2019 Colorado Session Laws, Ch. 247, § 2(1), https://leg.colorado.gov/sites/default/files/2019a_085_signed.pdf).)

With regard to the Promotion Posting Requirement, the Law's sponsors expressly advocated that the Law would "change the system and increase the opportunities for women to promote and go after those same positions," "expand the pool of employees that may come forward," and avoid how "insiders are hand-picked for promotion without consideration of additional applicants who may or may not be qualified but who don't have the opportunity." (ECF No. 23-1 at ¶ 3(a) (citing Equal Pay

for Equal Work Act: Hearing on S.B. 19-85 Before the S. Comm. on the Judiciary, 73rd

Gen. Assembly, 1st Reg. Sess. (Feb. 20, 2019), at 7:30–7:57 (testimony of Sen. Brittany

Peterson), 3:30:30–3:31:10 (testimony of Sen. Jessie Danielson)).)

With regard to the Compensation Posting Requirement, over 20 individuals

testified during the Senate Judiciary Hearing in support of the Law, including women not

being paid as much as male counterparts in large part because they did not know how

much male workers were making or how much they should be making.  (ECF No. 23-1

¶ 3(b).)

## B.    Procedural History

Plaintiff is a non-profit professional trade organization whose members consist of

recruitment and executive search firms that operate in Colorado, Wyoming, and New

Mexico.  (ECF No. 7 at 7.)

On December 29, 2020, Plaintiff filed this lawsuit against Defendant Scott Moss,

in his official capacity as Director of the Division of Labor Standards and Statistics of the

Colorado Department of Labor and Enforcement.  (ECF No. 1.)  Plaintiff asserts four

claims against Defendant: (1) a First Amendment compelled speech claim (*id.* ¶¶ 43–

49); (2) a Dormant Commerce Clause claim (*id.* ¶¶ 50–52); (3) a claim under 42 U.S.C.

§ 1983 ("§ 1983") premised on the First Amendment and Dormant Commerce Clause

violations (*id.* ¶¶ 53–56); and (4) a request for declaratory relief stating that the Law and

Implementing Regulations violate the First Amendment and the Dormant Commerce

Clause and are therefore unlawful (*id.* ¶¶ 57–60).  The Court has subject matter

jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the

Constitution and § 1983.  (*Id.* ¶ 10.)

On December 31, 2020, Plaintiff filed the Motion.  (ECF No. 7.)  Defendant responded on February 2, 2021 (ECF No. 23), and Plaintiff replied on February 16, 2021 (ECF No. 26).

The Court heard oral argument on the Motion on April 21, 2021.  (ECF No. 31.) Plaintiff subsequently submitted supplemental authorities regarding California Labor Code Section 432.3, which was referenced by Plaintiff's counsel during the oral argument.  (ECF No. 32.)

On April 26, 2021, the Court directed the parties to submit supplemental briefing addressing: (1) the types of burdens that "matter" under the Dormant Commerce Clause; (2) the most burdensome aspects of the Law and the Implementing Regulations; and (3) the relevant legislative history.  (ECF No. 33.)  The parties submitted their supplemental briefing on these topics on May 6 and May 17, 2021. (ECF Nos. 34, 35, 37, 38.)

## II. LEGAL STANDARD

To obtain a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, Plaintiff, as the moving party, must establish:

> (1) [it] will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.

*Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (alterations incorporated).  "As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Id.*  The balance of the harms and public interest factors merge when the government is a party.  *See Nken v. Holder*, 556 U.S. 418, 435

(2009).

The "limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *Schrier*, 427 F.3d at 1258 (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).  For that reason, the Tenth Circuit applies a heightened standard for "[d]isfavored preliminary injunctions," which do not

> merely preserve the parties' relative positions pending trial. Instead, a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win.  To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor.

*Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (citations and internal quotation marks omitted).

In the Motion, Plaintiff seeks a preliminary injunction prohibiting Defendant from enforcing Part 2 of the Law and its Implementing Regulations.  (ECF No. 7 at 1.)  The law went into effect January 1, 2021.  (*Id.* at 2.)  Because Plaintiff seeks to change the status quo and will receive substantially all the relief it seeks if the Motion is granted, Plaintiff seeks a disfavored injunction.  To succeed on its Motion, therefore, Plaintiff must meet the heightened standard for injunctive relief set forth by our Circuit in the *Free the Nipple* decision.

### III. ANALYSIS

Plaintiff contends that Part 2 of the Law and the Implementing Regulations (namely, Compensation Posting and Promotion Posting Requirements) violate the First

8

Amendment and the Dormant Commerce Clause.  The Court will first analyze whether Plaintiff has shown a substantial likelihood of success on the merits of its claims, as required by Rule 65.

## A.   Dormant Commerce Clause

### 1.   Legal Standards

The Commerce Clause states: "The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  U.S. Const., Art. I, § 8, cl. 3.  The Supreme Court "long has recognized that th[e] affirmative grant of authority to Congress [to regulate interstate commerce] also encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce."  *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 326 n.1 (1989); *see Dennis v. Higgins*, 498 U.S. 439, 447 (1991) ("[T]he Commerce Clause does more than confer power on the Federal Government; it is also a substantive restriction on permissible state regulation of interstate commerce." (internal quotation marks omitted)).  The Dormant Commerce Clause operates in this latter capacity by denying "the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce."  *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 98 (1994).

The Tenth Circuit has recognized that state statutes may violate the Dormant Commerce Clause in three ways:

> First, a statute that clearly discriminates against interstate commerce in favor of intrastate commerce is virtually invalid per se and can survive only if the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism.  Second, if the statute does not discriminate against interstate commerce, it will nevertheless

> be invalidated under the *Pike v. Bruce Church Inc.,* 397 U.S. 137, 142 (1970), balancing test if it imposes a burden on interstate commerce incommensurate with the local benefits secured.  Third, a statute will be invalid per se if it has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question.

*KT& G Corp v. Att'y Gen. of State of Okla*., 535 F.3d 1114, 1143 (10th Cir. 2008).

Plaintiff argues that the Law and the Implementing Regulations unduly burden interstate commerce under *Pike*.[3]  (ECF No. 7 at 18; ECF No. 36 at 14.)  Under *Pike*, a state statute that does not directly regulate or discriminate against interstate commerce may nonetheless still be invalid if the "burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits."  397 U.S. at 142.  "If a legitimate local purpose is found, then the question becomes one of degree.  And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."  *Id.*

In considering a *Pike* challenge, a court must consider four factors:

> (1) the nature of the putative local benefits advanced by the [statute]; (2) the burden the [statute] imposes on interstate commerce; (3) whether the burden is "clearly excessive in relation to" the local benefits; and (4) whether the local interests can be promoted as well with a lesser impact on

---

[3] In the Motion, Plaintiff states that the Law "reaches extraterritorially by its own terms." (ECF No. 7 at 18.)  To the extent Plaintiff is attempting to argue, in addition to its *Pike* challenge, that the Compensation Posting and Promotion Posting Requirements fall within the third category of Dormant Commerce Clause claims—assertions of extraterritorial control over commerce occurring entirely outside the boundaries of the state—the Court finds that Plaintiff has waived this argument for purposes of the Motion because it has not supported this argument with pertinent authority.  *See Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir. 1992) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (citation omitted)).

interstate commerce.

*Blue Circle Cement, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Rogers*, 27 F.3d 1499, 1512 (10th Cir. 1994) (citing *Pike*, 397 U.S. at 142).  The party challenging the statute bears the burden of establishing a *Pike* violation of the Dormant Commerce Clause. *See Dorrance v. McCarthy*, 957 F.2d 761, 763 (10th Cir. 1992).

2.    <u>Putative Local Benefits</u>

The putative local benefits involved are clear: the Colorado legislature passed the Law to "help[ ] to close the pay gap in Colorado and ensure that employees with similar job duties are paid the same wage rate regardless of sex, or sex plus another protected status."  S.B. 19-85, Colorado Equal Pay for Equal Work Act, 2019 Colorado Session Laws, Ch. 247, § 2(1).  The parties agree, as does the Court, that as a public policy matter gender equity in pay is an important societal goal.  (ECF No. 7 at 1; ECF No. 23 at 8.)

However, Plaintiff argues that "there is simply no evidence that the [Compensation Posting and Promotion Posting Requirements] will have any effect at all on the pay gap in Colorado."  (ECF No. 7 at 19.)  It contends that "other than the purported 'benefit' of mere receipt of this information, it is unclear how this 'transparency' provides local public benefit, where there is no evidence that a lack of this information underlies the pay gap."  (*Id.*)

Defendant counters that "a plaintiff cannot simply argue that the benefits do not exist or are unlikely to be realized in an attempt to unweight the benefits side of the scale."  (ECF No. 37 at 12.)  According to Defendant, it is the putative benefits—*i.e.*, claimed, local benefits—that matter for purposes of assessing whether the Law violates

*Pike*.  (*Id.* (citing *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 313 (1st Cir. 2005)

("[U]nder *Pike*, it is the *putative* local benefits that matter.  It matters not whether these

benefits actually come into being at the end of the day." (emphasis in original))).)

 The Court recognizes that evidence regarding the effectiveness of a statute in

achieving its stated purpose may be relevant in balancing the putative local benefits

against the burdens on interstate commerce.  *See Blue Circle Cement*, 27 F.3d at 1512

(recognizing that "[r]egulations designed for [a] salutary purpose nevertheless may

further the purpose so marginally, and interfere with commerce so substantially, as to

be invalid under the Commerce Clause").  However, at this initial, pre-discovery stage of

the litigation, Plaintiff presents only attorney argument in support of the proposition that

the Law and the Implementing Regulations will not achieve their stated goal of reducing

the gender wage pay gap.[4]  Actual evidence of same is lacking in the record, at least as

currently developed.

 3. <u>Burdens on Interstate Commerce</u>

 Plaintiff argues that any putative local benefits arising from the Law and

Implementing Regulations are outweighed by their burdens on interstate commerce

"because the law interferes with a fundamental part of the process of talent acquisition

and mobility nationwide (and worldwide), *i.e.*, the way employers conduct the interstate

hiring of labor and postings: job postings."  (ECF No. 38 at 6.)

---

[4] In its supplemental briefing, Plaintiff argues that "it is Defendant who has declined to present coherent evidence of [the Law's] putative benefits, or to challenge Plaintiff's evidence of its burdens."  (ECF No. 38 at 11.)  This contention, however, reflects a fundamental misapprehension by Plaintiff of the allocation of the burden of proof on its claim.  It is, of course, *Plaintiff's* burden, not Defendant's, to establish a violation of the Dormant Commerce Clause. *See Dorrance*, 957 F.2d at 763.

At the Court's request, Plaintiff has compiled a list of what it considers the two most burdensome aspects of the Compensation Posting and Promotion Posting Requirements. (ECF No. 35.) With regard to the Compensation Posting Requirement, Plaintiff contends that employers now must: (1) post prospective compensation ranges for jobs that "could" be performed in Colorado, including remote jobs; and (2) disclose information that employers consider to be confidential information and/or trade secrets. (*Id.* at 2.) Likewise, Plaintiff argues the Promotion Posting Requirement: (1) compels employers to notify their Colorado employees of *any* promotion opportunity from around the world regardless of whether any Colorado employees are eligible for that opportunity; and (2) does not exempt trade secret disclosures, confidential searches, corporate mergers, or reorganizations. (*Id.*)

Defendant contends that Plaintiff's enumerated burdens "are of minimal constitutional significance." (ECF No. 34 at 4.) According to Defendant, "while [Plaintiff's operational costs] may in some cases be suggestive of overall burdens on interstate commerce, the focus must remain on the interstate market, and not interstate firms." (*Id.*) Here, Defendant contends that the Law and the Implementing Regulations' effects are immaterial under *Pike* because they "are felt primarily in Colorado or, at worst, are felt equally both within and without Colorado," which demonstrates that the Law does not impose a burden on interstate commerce that exceeds the burden placed on intrastate commerce. (*Id.* at 11.) Finally, Defendant argues that even if Plaintiff's operational costs are cognizable as harms under *Pike*, "the actual allegations here are of little constitutional significance because they are alleged only in the broadest and most general of terms" and "are insufficient to shoulder Plaintiff's substantial burden

under *Pike* balancing." (*Id.* at 13.)

As Defendant points out, the Dormant Commerce Clause "protects the interstate market, not particular intrastate firms, from prohibitive or burdensome regulations." *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127–28 (1978).  Nonetheless, the Court does not discount the possibility that some of the harms suffered by Plaintiff's members "may be suggestive" of *Pike*'s overall "benefit-to-burden calculation," which "is based on the overall benefits and burdens that the statutory provision may create, not on the benefits and burdens with respect to a particular company or transaction."  *Quik Payday, Inc. v. Stork*, 549 F.3d 1302, 1309 (10th Cir. 2008).

At this stage of the litigation, however, the Court finds that Plaintiff has failed to put forward the necessary evidence regarding the relative magnitude of the local benefits, as compared to the burdens on interstate commerce, engendered by the Law and the Implementing Regulations.  Without such evidence, the record now before the Court is insufficient to establish a substantial likelihood of success on the merits of Plaintiff's Dormant Commerce Clause claim.  As the Tenth Circuit recognized in *Kleinsmith v. Shurtleff*,

> [a]ny balancing approach, of which *Pike* is an example, requires evidence.  It is impossible to tell whether a burden on interstate commerce is clearly excessive in relation to the putative local benefits without understanding the magnitude of both burdens and benefits.  Exact figures are not essential (no more than estimates may be possible) and the evidence need not be in the record if it is subject to judicial notice, but it takes more than lawyers' talk to condemn a statute under *Pike.*

571 F.3d 1033, 1043–44 (10th Cir. 2009) (quoting *Baude v. Heath*, 538 F.3d 608, 6012 (7th Cir. 2008)).

A brief summary of the record now before the Court will serve to illustrate the point it is making here in regards to the inadequacy of Plaintiff's evidence to the task it faces in order to prevail on its Motion.  In addition to providing evidence of the Law's statutory text and interpretative guidance, Plaintiff has submitted three declarations as its evidence in support of the Motion.

Two declarations submitted by Mary Mathews identify numerous job postings in which employers have specified that Colorado applicants are ineligible for positions. (*See* ECF Nos. 7-4–7-10, 26-2–26-6.)  Plaintiff contends that these postings demonstrate a burden on the interstate labor market based on the fact that "Colorado workers have lost access to job opportunities."  (ECF No. 7 at 18; ECF No. 35 at 5 ("[P]erhaps the best evidence of the burden on the interstate labor market from the inclusion of remote jobs within the Compensation Posting Requirement is the fact that many employees have chosen to remove remote opportunities from Colorado residents rather than add salary information to those postings.").)

However, although these postings may show that the Law burdens the *intrastate* commerce market, they do not demonstrate harms to the *interstate* commerce market writ large.  *Cf. Exxon*, 437 U.S. at 127 ("Some refiners may choose to withdraw entirely from the Maryland market, but there is no reason to assume that their share of the entire supply will not be promptly replaced by other interstate refiners . . . but interstate commerce is not subjected to an impermissible burden simply because an otherwise valid regulation causes some businesses to shift from one interstate supplier to another."); *V-1 Oil Co. v. Utah State Dep't of Pub. Safety*, 131 F.3d 1415, 1425 (10th Cir. 1997) (recognizing that "the 'incidental burdens' of the *Pike* inquiry 'are the burdens

on interstate commerce that exceed the burdens on intrastate commerce.'" (quoting *N.Y. State Trawlers Ass'n v. Jorling,* 16 F.3d 1303, 1308 (2d Cir. 1994))).

The third declaration, submitted by Rebecca Bayne, describes how the Law and Implementing Regulations burden Plaintiff's members in extraordinarily broad terms. (*See, e.g.*, ECF No. 7-11 ¶ 12 ("It would be administratively burdensome and nearly impossible for employers to try to narrow or explain [compensation] nuances in hundreds or thousands of job postings."); ¶ 13 ("Determining a general pay range for a position before locating a specific candidate will therefore require significant work by most employers . . . ."); ¶ 16 ("Collectively, [Plaintiff's] members stand to lose millions of dollars in search fees if [confidential] searches are effectively eliminated by this law."); ¶ 17 ("Based on my knowledge of how large employers' talent management and [human resource] systems operate, employers would need to hire people, or teams of people to review any proposed job changes and provide notice to Colorado employees before a normal career progression move could occur."); ¶ 18 ("It would be time consuming and impractical to provide notice of [corporate reorganization or merger moves] to every employee in Colorado for whom each role could be a promotion . . . .").)

While the Court will not require precise figures or statistics to determine whether and to what extent the Law and Implementing Regulations impose a burden on interstate commerce, the notable lack of specificity in Plaintiff's evidence makes it difficult for the Court to conclude that the operational costs of Plaintiff's members are indeed suggestive of the burdens on the interstate market writ large.

For example, notwithstanding Plaintiff's assertion that the "single most burdensome aspect" of the Law is the overbreadth of the Promotion Posting

Requirement and its lack of exceptions for "in seat" promotions, the Court has received little more than attorney argument regarding this burden.  Plaintiff has not provided evidence from which the Court can draw specific conclusions regarding: how employers will be forced to change their human resources practices to comply with the Promotion Posting Requirement and the cost of such changes; how long worldwide promotions will be delayed so that Colorado residents can be notified of potential promotion opportunities; and, mostly importantly, how these administrative burdens will result in harms to the interstate labor market (*e.g.*, creating fewer overall jobs or fewer overall job seekers).  (ECF No. 35 at 8–9.)

Without such specific evidence regarding the Law's burdens on interstate commerce, the Court cannot conclude that the burdens on interstate commerce are clearly excessive in relation to the putative local benefits.[5]  On this record, therefore, Plaintiff has failed to establish that the burdens on interstate commerce clearly exceed the putative local benefits, benefits which are largely not contested by the parties.  As a result, the Court finds that Plaintiff has failed to establish a substantial likelihood of success on its Dormant Commerce Claim.  The Court need not, therefore, analyze whether the local interests can be promoted as well with a lesser impact on interstate commerce.

---

[5] Likewise, to the extent that Plaintiff argues that the Law and Implementing Regulations "conflict with the statutory schemes of Illinois and Massachusetts" (ECF No. 7 at 20), its argument is unavailing.  The Massachusetts and Illinois statutes: (1) prohibit employers from discharging or retaliating against employees because the employees disclosed their current salaries; and (2) allow employers to prohibit employees from disclosing another employee's compensation information without that employee's prior written consent.  *See* 820 Ill. Comp. Stat. 112/10(b); Mass. Gen. Laws ch. 149, § 105A(c)(3).  Critically, however, these statutes do not say anything about prohibiting employers from disclosing anticipated compensation for *prospective* employees.

**B.     First Amendment Challenge**

1.     Legal Standards

The First Amendment declares in part that "Congress shall make no law . . .

abridging the freedom of speech."  U.S. Const. amend. I.  The First Amendment applies

to state and local governments through the Fourteenth Amendment.  *Manhattan Cmty.*

*Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).  The First Amendment's

safeguard against state action "includes both the right to speak freely and the right to

refrain from speaking at all."  *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).

Commercial speech is that which "does no more than propose a commercial

transaction."  *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425

U.S. 748, 776 (1976) (Stewart, J., concurring).  It is well-established that commercial

speech "occurs in an area traditionally subject to government regulation" and therefore

occupies a "subordinate position in the scale of First Amendment values."  *United*

*States v. Wenger*, 427 F.3d 840, 846 (10th Cir. 2005) (quotation marks and citations

omitted).  "[T]he State's power to regulate commercial transactions justifies its

concomitant power to regulate commercial speech that is linked inextricably to those

transactions."  *Id.* (citation omitted).

Because the Law and the Implementing Regulations compel commercial speech,

the parties agree that *Zauderer v. Office of Disciplinary Counsel of the Supreme Court*

*of Ohio*, 471 U.S. 626 (1985), controls.  (ECF No. 36 at 41, 48.)  Under *Zauderer*,

disclosure requirements for commercial speech are constitutional so long as they are

"reasonably related" to the State's substantial government interest and are not so

"unjustified or unduly burdensome" that they "chill [ ] protected commercial speech."

471 U.S. at 651.

"[T]he burdens at the preliminary injunction stage track the burdens at trial."

*Gonzalez v. O Centro Espirita Beneficente Uniao de Vegetal*, 546 U.S. 418, 429 (2006).

It is well-established that the party seeking to uphold a restriction on commercial speech

carries the burden of justifying it.  *See Ibanez v. Fla. Dep't of Bus. & Prof. Reg., Bd. of*

*Accountancy*, 512 U.S. 136, 142–43 (1994).  Thus, if Defendant fails "to make a

sufficient showing" that the speech is reasonably related to a substantial government

interest and does not impose an undue burden at this preliminary injunction stage,

Plaintiff "will have shown a substantial likelihood that they will prevail on the merits of

their claim."  *Harmon v. City of Norman, Okla.*, 981 F.3d 1141, 1147 (10th Cir. 2020).

         2.      Reasonable Relationship To A Substantial Government Interest

         Plaintiff does not dispute that the goal of eliminating the gender wage pay gap is

a "substantial" government interest.  (ECF No. 7 at 16 n.3.)  Plaintiff contends, however,

that the Law and the Implementing Regulations are not reasonably related to Colorado's

stated goals because "there is no evidence that the disclosures compelled [by the Law

and the Implementing Regulations] will have any effect on the wage pay gap in

Colorado."  (*Id.* at 16.)  Plaintiff further argues that the Compensation and Promotion

Posting Requirements may "mislead as much as [they] will inform workers," as they

could erroneously cause applicants to believe that a position is open or pays a higher

amount than is offered for that applicant's geographic location.  (*Id.* at 17–18.)

         In response, Defendant argues that the Colorado Senate Judiciary heard hours

of testimony on S.B. 19-085, which included, *inter alia*, testimony about women

receiving lower compensation than their male counterparts because the women did not

know how much they should have been making.  (ECF No. 23 at 9.)  Specifically,

Defendant argues that the Compensation Posting Requirement helps curtail

discrimination by: (1) making employers determine a salary range based on objective

reasons; (2) allowing all job candidates to have equal access to salary range

information for a position, thus putting them on equal footing in negotiations; (3) holding

employers accountable to the salary ranges they commit to when they post positions;

and (4) providing evidence to either support or refute a claim of discrimination in

compensation.  (*Id.*)  Defendant likewise contends that the Promotion Posting

Requirement helps prevent an "old boys' problem" whereby "women are excluded from

opportunities without even realizing they existed in the first place."  (*Id.*)

The Court finds that the Law and the Implementing Regulations bear a

reasonable relationship to a substantial government interest.  As Plaintiff concedes, the

goal of reducing the gender wage pay gap is undoubtedly a substantial government

interest.  *See Greater Philadelphia Chamber of Commerce v. City of Philadelphia*, 949

F.3d 116, 142 (3d Cir. 2020) (determining that remedying wage discrimination and

promoting wage equity is a substantial government interest).

To be sure, Defendant has not produced substantial empirical proof showing that

the Law and the Implementing Regulations will have a demonstrable effect on the

gender wage pay gap.  (ECF No. 35 at 19–20 (arguing that "no evidence was ever

presented to the legislators that could lead them to conclude that either the

Compensation Posting Requirement or the Promotion Posting Requirement would help

narrow the gender-wage pay gap.").)  However, such legislative certainty is not required

to justify restrictions on speech.  *See Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628–29

(1995) (recognizing that courts have "permitted litigants to justify speech restrictions by reference to studies and anecdotes pertaining to different locales altogether," as well as "history, consensus, and 'simple common sense'"); *City of Philadelphia*, 949 F.3d at 1122 (recognizing that an enacting authority need not "achieve legislative certainty or produce empirical proof that the adopted legislation will achieve the stated interest"); *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 26 (D.C. Cir. 2014) (en banc) (recognizing *Zauderer*'s "reasonably related" analysis need not involve "evidentiary parsing" where "the government uses a disclosure mandate to achieve a goal of informing consumers about a particular product trait").

Before passing the Law, the Colorado legislature heard testimony regarding statistics about the gender wage pay gap, personal testimonials from women who were making less than peers because they did not know what their peers were being paid, and testimony from the Women's Lobby of Colorado suggesting that women are not being promoted because they are not submitting their names for consideration.  (ECF No. 35 at 20–23.)  Such testimony provides a basis for the Court to conclude that the Compensation Posting and Promotion Posting Requirements may help eliminate or at least reduce the gender wage pay gap in Colorado.  It is also commonsensical to conclude that women may be able to better advocate for promotion opportunities and better pay if they are apprised of job openings and given an expected compensation range for each position.

The Court therefore finds that the Compensation Posting and Promotion Posting Requirements bear a rational relationship to the goal of reducing the wage pay gap because the Law will help apprise women of promotion opportunities and give all

candidates equal footing when negotiating compensation.

3.    Undue Burden

Plaintiff next argues that the Law and the Implementing Regulations create an undue burden on employers by "requiring employers like Plaintiff's members and their clients to make fundamental changes to their recruiting systems in order to disclose detailed and sensitive information that is often not readily available to them."  (ECF No. 7 at 15.)  Plaintiff further argues that the Law and the Implementing Regulations effectively rule out employers' individualized messages.  (*Id.* at 15–16.)

Defendant counters that the Law and the Implementing Regulations do not chill protected commercial speech because the requirements on speech are not particularly lengthy or onerous and "do not rule out speech or nullify any message employers might wish to contribute."  (ECF No. 23 at 11–12.)  The Court agrees.

In *Zauderer*, the Supreme Court upheld a requirement that attorney advertisements include a warning that clients may be liable for litigation costs if their lawsuits are unsuccessful.  471 U.S. at 650.  Recognizing that "the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides," the Supreme Court reasoned that the "appellant's constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal" and that "an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers."  *Id.* at 651.

Here, as in *Zauderer*, the Compensating Posting and Promotion Posting

Requirements require disclosure of factual information.  *Id.* at 650–51.[6]  Although the

Law and the Implementing Regulations may require disclosure of "more information

than [employers] might otherwise be inclined to present," they do not impose an

"outright prohibition[ ] on speech."  *Id.*

Plaintiff relies on several cases in which courts have found that government-

scripted disclaimers violate the First Amendment.  However, these cases are

distinguishable because they involved lengthy disclaimers that distracted from the

speakers' messages that could have accomplished the same goal with less of a burden

on protected speech.  *See, e.g.*, *Ibanez*, 512 U.S. at 146–47 ("The detail required in the

disclaimer described by the Board effectively rules out" the individual's message); *Am.*

*Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 757 (9th Cir. 2019)

(finding ordinance requiring health warnings on advertising for sugar-sweetened

beverages that covered 20% of the advertisement was unduly burdensome where

findings suggested that goals could be accomplished with a smaller warning); *Pub.*

*Citizen Inc. v. La. Att'y Disciplinary Bd.*, 632 F.3d 212, 228–29 (5th Cir. 2011)

(disclosure requirements for attorney advertisements were overly burdensome because

they "effectively rule[d] out the ability of Louisiana lawyers to employ short

advertisements of any kind").[7]

---

[6] Although Plaintiff argues that the required disclosures may mislead job candidates by giving them a false impression regarding the pay for particular geographic markets or regarding whether positions are open to given applicants, employers have the ability to minimize possible confusion by providing additional information about the compensation rates for particular geographic ranges and explaining which candidates are eligible for specific positions.

[7] Likewise, Plaintiff's citation to *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781 (1988) is unavailing because *Riley* applies strict scrutiny, not rational basis scrutiny.

At this stage, the Court cannot conclude that there is a similar concern that the Compensation Posting and Promotion Posting Requirements will drown out employers' individual messages in job postings; after all, these requirements can be satisfied in short statements and by disclosing promotion opportunities available to some employees to current Colorado employees.  *See Wenger*, 427 F.3d at 851 (concluding that requirement that publicists disclose the amount of consideration they are receiving "impose[s] little burden on speech" as it "takes only a slight effort to tell one's listeners or readers" that they have been paid for the publication or broadcast); *Spirit Airlines, Inc. v. Dep't of Transp.*, 687 F.3d 403, 414 (D.C. Cir. 2012) (sustaining Department of Transportation rule requiring airlines to prominently display final prices on their website because "the rule is aimed at providing accurate information, not restricting it" and "imposes no burden on speech other than requiring airlines to disclose the total price consumers will have to pay").

Moreover, while Plaintiff has presented some evidence that some employers are restricting Colorado residents from job opportunities so that they do not have to comply with the Compensation Posting Requirement (see ECF Nos. 7-4–7-10), the Court cannot include at this juncture that the Law and Implementing Regulations constitute an undue burden by chilling *speech*.  After all, employers are still able to recruit candidates with compensation rates for positions of the employers' choosing.  The Compensation Posting and Promotion Posting Requirements merely require that the employees be apprised of promotion opportunities and the expected compensation for a given position, which places candidates on equal footing and reasonably advances the

government's interest in closing the gender wage pay gap.[8]

Thus, because Defendant has made a sufficient showing at this stage of the litigation that the Compensation Posting and Promotion Posting Requirements are reasonably related to a substantial government interest and do not impose an undue burden, Plaintiff has failed to show a substantial likelihood of success that it will prevail on the merits of its First Amendment claim.

* * * *

Because Plaintiff has not demonstrated a substantial likelihood of success on the merits of either its Dormant Commerce Clause or First Amendment claims, the Court need not analyze whether Plaintiff has satisfied the remaining requirements for a preliminary injunction.

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS that Plaintiff's Motion for Preliminary Injunction (ECF No. 7) is DENIED.

---

[8] Plaintiff also contends that compensation information may constitute trade secrets. (ECF No. 7 at 7–8; ECF No. 35 at 7.)  However, as Defendant points out, the question about whether the compensation information covered by the Compensation Posting Requirement is a trade secret is a complex question that the Court cannot determine on the present record.  (ECF No. 37 at 5–6.)  The Court further notes that Plaintiff's concerns regarding the disclosure of trade secrets may be more properly cognizable as a Fifth Amendment Taking Clause claim, a claim Plaintiff has to date elected not to pursue.  *See, e.g.*, *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 114 (2d Cir. 2001) ("To the extent commercial speakers have a legally cognizable interest in withholding accurate, factual information, that interest is typically accommodated by the common law of property and its constitutional guarantors.").

Dated this 27th day of May, 2021.

BY THE COURT:

_____

William J. Martinez
United States District Judge